786 P.2d 403

**David YETMAN,**
**Plaintiff/Appellant/Cross–Appellee,**

v.

**William ENGLISH,**
**Defendant/Appellee/Cross–Appellant.**

No. 2 CA–CV 88–0173.

Court of Appeals of Arizona,
Division 2, Department B.

Aug. 15, 1989.

Petition for Review Denied and
Cross–Petition for Review Granted
Feb. 27, 1990.*

Law Offices of William J. Risner by William J. Risner, Tucson, for plaintiff/appellant/cross-appellee.

O'Dowd, Burke & Lundquist, P.C. by Eric M. O'Dowd and Robert E. Lundquist,

---

* Gordon, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Tucson, for defendant/appellee/cross-appellant.

## OPINION

FERNANDEZ, Chief Judge.

In this slander case, appellant David Yetman appeals from the trial court's ruling refusing to instruct the jury on the issue of punitive damages. Appellee William English cross-appeals from the court's ruling that English's remark constituted slander per se. We find that both rulings were correct and affirm.

In August 1985, Yetman was an elected member of the Pima County Board of Supervisors, and English was an elected member of the Arizona House of Representatives. English was the invited speaker at a weekly luncheon meeting of the Pima County Republican Club. At the end of his speech, English responded to questions from the audience. Some of those who attended the meeting were members of the Pima County Rural Property Owners' Association. The group was at that time concerned about a proposal before the Board of Supervisors to amend the county general rural zoning classification, which would affect substantial areas of land in the county. Yetman was in favor of the zoning change, and the property owners' association opposed it. One of the association members asked English his opinion of the proposed zoning change and whether he believed Yetman was behind the proposal. English responded with a lengthy answer, during the course of which he asked, "What kind of communist do we have up there that thinks it's improper to protect your interests?"

Yetman sued for slander. After a five-day jury trial, he was awarded $5,000 in damages.

## PUNITIVE DAMAGES

Because Yetman was a public figure, he was required to prove that English was motivated by actual malice when he made the remark. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Pursuant to that requirement, the trial court instructed the jury in part as follows:

Because plaintiff is a public figure, he is not entitled to recovery for the libelous statement unless he proves by clear and convincing evidence that the statement was made with actual malice.

'Actual malice' means that the defendant made the statement with knowledge that it was false or with reckless disregard of whether it was false or not.

'Reckless disregard' means a high degree of awareness of the probable falsity of the statement. It does not mean mere negligence or carelessness.

In order to be entitled to punitive damages, however, Yetman was required to show that English was motivated by an "evil mind" when he made the remark. *Gurule v. Illinois Mutual Life & Casualty Co.*, 152 Ariz. 600, 734 P.2d 85 (1987); *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986); *Linthicum v. Nationwide Life Insurance Co.*, 150 Ariz. 326, 723 P.2d 675 (1986).

The evil mind which will justify the imposition of punitive damages may be manifested in either of two ways. It may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

*Rawlings*, 151 Ariz. at 162, 726 P.2d at 578. The trial court refused to submit the issue of punitive damages to the jury because it determined Yetman had presented insufficient evidence of English's state of mind, citing in particular the fact that there was no sustained course of conduct involved and the fact that the remark was made in an unprepared fashion.

Yetman argues that he presented sufficient evidence of a sustained course of conduct by English. In support of that argument, Yetman cites evidence of the fact that English was contacted two to three weeks prior to the luncheon by one of the organizers of the Rural Property Owners' Association who asked him to address the

zoning issue. English testified he replied that he would not address the issue in his speech, and his testimony and that of others who attended the luncheon was that he did not mention zoning in his speech. Yetman contends that the fact that English had been contacted about zoning indicates that the question asked at the lunch meeting was not one of first impression. We fail to see, however, how English's awareness of the existence of a political issue on which he had already developed opinions constituted evidence that he spoke with an evil mind when he called Yetman a communist in the course of responding to a question about the political issue and Yetman's position on that issue. The mere fact that English knew the zoning issue existed is not evidence of whether he spoke with the intent to injure Yetman or that he consciously pursued a course of conduct knowing it created a substantial risk of significant harm to Yetman.

Yetman also attempted to show evidence of an evil mind by presenting testimony that the member who called English prior to the speech "collared" him before the luncheon meeting began, again seeking to have him address the zoning issue in his speech, and that several association members gathered into a "huddle" at the meeting to discuss the issue with English. Again, we fail to see how the vigorous efforts of association members to obtain a legislator's support on a political issue serves as evidence of a sustained course of conduct by the legislator to intentionally injure a politician with an opposing view on the issue.

Yetman argues additionally that English's state of mind was evidenced by his testimony that he made no attempt to contact the newspaper that quoted his remark and that he felt he had no apologies to make to Yetman for the remark. Although English did testify that he believed he owed Yetman no apology, he stated that was because he believed the newspaper had not quoted him correctly. English also testified that he did not ask the newspaper for a correction because, in his opinion, the paper was not known for its accuracy.

Thus, his complete testimony does not constitute evidence of an evil mind.

Finally, Yetman argues that English is an experienced politician who is aware of the effect of his remarks, who made the slanderous remark at a meeting he knew would be reported in the media, who knew the effect in Arizona of calling a politician a communist, who testified that no one had ever told him Yetman was a communist and that his opinion of Yetman was one he had reached through a "process of osmosis." Although we agree that those facts could support a finding that English made the remark with reckless indifference as to its effect on Yetman, they do not support a finding that English intended to injure Yetman or that he consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. *Gurule.*

We agree with the trial court that Yetman presented insufficient evidence to warrant submission of the punitive damages issue to the jury.

### SLANDER PER SE

■ English cross-appeals from the court's ruling that his remark calling Yetman a communist was slander per se, thus leaving for the jury only the questions of whether the remark was true, whether it was made with actual malice and whether Yetman was entitled to any damages. The ruling was based on the holding in *Phoenix Newspapers, Inc. v. Church,* 103 Ariz. 582, 447 P.2d 840 (1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969), that it is libel per se to charge a person with having communist sympathies.

English contends that the ruling was erroneous, arguing that his statements, "taken as a whole—including the questions and remarks preceding the rhetorical question—were sufficiently ambiguous" for it to be improper for the court to rule on the issue as a matter of law. He also contends that the trial court's ruling ignored the guidelines set out in *Church* for determining whether a statement is slander per se. We disagree. The guidelines listed in *Church* are as follows: (1) the trial court examines the statement to determine if it is unambiguous; (2) the statement is viewed

as a whole through the ears of an average listener; and (3) the statement is measured by its probable effect upon the average listener.

We find that English's remark was unambiguous and that it clearly insinuated that Yetman is a communist. Indeed, English testified at his deposition, in an exchange that was read to the jury at trial, as to his definition of a communist and his belief that Yetman believes in each aspect of that definition. We find no merit to English's contention that the remark can be viewed as "merely a hyperbolic castigation of Appellant's (and other officials') failure to give due hearing and consideration to the presentations of those who opposed Pima County's downzoning ordinance."

With regard to the second guideline in *Church,* English argues that the trial court erroneously failed to take into account the questions and remarks preceding his own remark. English, however, has misread *Church.* In that case, the plaintiff contended that a newspaper article was libelous. Therefore, the court properly examined the entire article in determining whether it was libelous per se. This case, on the other hand, is one for slander. Thus, English's complete remarks about Yetman are relevant, but the questions and remarks of another person at the meeting can in no way be relevant to the question of whether English's remark constitutes slander per se. What we do find significant, however, is the context in which the statement was made: a weekly meeting of the Pima County Republican Club attended by politicians, interested party members and the media.

As to the third guideline of *Church,* we note that a political science professor testified as to the results of public opinion surveys which showed that a substantial number of Americans are intolerant of persons who are alleged to be communists.

We find the trial court properly ruled that English's remark constituted slander per se.

Affirmed.

LACAGNINA, J., concurs.

LIVERMORE, Judge, dissenting.

I do not believe the comment made by English about a fellow public official is actionable. Echoing the language of *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970), no one hearing that offhand remark could have thought that English was accusing Yetman of being a member of the Communist Party, much less that he was espousing "intimidation, blackmail and terrorism" as was the case in *Phoenix Newspapers, Inc. v. Church,* 103 Ariz. 582, 588, 447 P.2d 840, 846 (1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969). On the contrary, even the most careless listener must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used to denigrate Yetman's supposed aversion to the interests of property owners. In these circumstances to allow this case to go to a jury would imperil that wide open and robust debate that the First Amendment protects.

Political discourse is full of labels—fascist, Nazi, Gestapo-like, racist, sexist, Birchite, ultra-liberal, communist, apologist for criminals, etc. All are designed to injure opponents by describing their views as so wrong as to approach being evil. One could hope for greater balance and civility. One's hope and the constitutional command are very different. The arts—or perhaps black arts—of persuasion cannot be so cabined. Nor may political argument be robbed of the evocative word or phrase.

I would reverse the judgment.